UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Stephen Phillips, Mary Tourville-Phillips, Sandi Barnett, Gregory Benjamin, Tyrus Davis, and Christopher Bingham, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

Caliber Home Loans, Inc.,

Defendant.

Case No. 19-cv-2711 (WMW/LIB)

**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES**

---

This matter is before the Court on Plaintiffs' unopposed motion for final approval of class action settlement and Plaintiffs' unopposed motion for attorneys' fees, litigation costs and service awards. (Dkts. 95, 102.) On July 19, 2021, the Court granted Plaintiffs' unopposed motion for preliminary approval of the proposed settlement (Settlement Agreement) between Plaintiffs Stephen Phillips, Mary Tourville-Phillips, Sandi Barnett, Gregory Benjamin, Tyrus Davis and Christopher Bingham (collectively, Plaintiffs or Settlement Class Representatives) and Defendant Caliber Home Loans, Inc. (Caliber). On December 16, 2021, the Court held a Final Approval Hearing to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate. The Court has considered all the submissions and arguments of the parties. For the reasons addressed below, pursuant to Federal Rule of Civil Procedure 23, and in accordance with the terms of the Settlement Agreement, the Court finds good cause to

grant Plaintiffs' unopposed motions for final approval and attorneys' fees and enter final judgment in this case.

## BACKGROUND

### I.      Procedural Background

Plaintiffs commenced separate actions in Minnesota, North Carolina, and Texas, respectively. Plaintiff Phillips and Plaintiff Tourville-Phillips initiated a class action lawsuit in Lake County District Court (Sixth Judicial District) in Minnesota, which Caliber removed to this Court on October 14, 2019, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *Phillips v. Caliber Home Loans, Inc.*, No. 0:19-cv-02711 (Phillips Lawsuit). Plaintiff Barnett and Plaintiff Benjamin initiated a class action lawsuit in the United States District Court for the Southern District of Texas, alleging breach of contract and violations of the Texas Debt Collection Practices Act (TDCPA). *Barnett v. Caliber Home Loans*, No. 2:19-cv-309 (Barnett Lawsuit). Plaintiff Davis and Plaintiff Bingham initiated a class action lawsuit in the United States District Court for the Middle District of North Carolina. *Davis v. Caliber Home Loans, Inc.*, No. 1:20-cv-00338 (Davis Lawsuit). Plaintiff Davis alleged breach of contract and violations of the North Carolina Debt Collection Act, the North Carolina Mortgage Debt Collection and Servicing Act, and the North Carolina Unfair and Deceptive Trade Practices Act. Plaintiff Bingham alleged breach of contract and violations of the Maryland Consumer Debt Collection Act. Although the three putative class actions were commenced separately, each is based on one common factual

allegation: Caliber charged and collected millions of dollars in Pay-to-Pay Fees from homeowners, in addition to their regular mortgage payments.  Plaintiffs allege that this practice violated the laws of Minnesota, North Carolina, Maryland and Texas, and breached their mortgage agreements.  Caliber denies the allegations in the complaints and denies any wrongdoing.

On December 11, 2019, Caliber moved to dismiss the Phillips Lawsuit.  This Court denied Caliber's motion to dismiss the Phillips' breach-of-contract claim and unjust-enrichment claim but granted Caliber's motion to dismiss the Phillips' claim for breach of the implied covenant of good faith and fair dealing.  Thereafter, the Phillips Plaintiffs filed a Second Amended Complaint adding a claim that Caliber's conduct also violated the Fair Debt Collections Practices Act.  This Court subsequently stayed the proceedings in the Phillips Lawsuit pending mediation.

On December 9, 2019, Caliber moved to dismiss the Barnett Lawsuit.  The district court denied Caliber's motion to dismiss the TDCPA claim but granted Caliber's motion to dismiss the breach-of-contract claim.  The district court subsequently stayed the proceedings in the Barnett Lawsuit pending mediation.

On May 29, 2020, Caliber moved to dismiss the Davis Lawsuit.  While Caliber's motion to dismiss the Davis Lawsuit remained pending, the district court stayed the proceedings in the Davis Lawsuit pending mediation.

On March 31, 2021, the parties participated in a full-day mediation session conducted by Jill Sperber. With the assistance of the mediator, the parties reached

mutually agreeable terms of a global settlement. Notices of settlement subsequently were filed in the Phillips Lawsuit, the Barnett Lawsuit, and the Davis Lawsuit (collectively, the Related Cases). Each notice provided that a global settlement (Settlement) had been reached and that Plaintiffs Davis, Bingham, Barnett, and Benjamin would be added as named plaintiffs to the Phillips Lawsuit. On April 16, 2021, the Phillips Plaintiffs filed a Third Amended Complaint, adding Plaintiffs Davis, Bingham, Barnett, and Benjamin to the Phillips Lawsuit.

In May 2021, the parties executed the Settlement Agreement, which memorializes the terms and conditions of the proposed Settlement. This Court preliminarily approved the Settlement Agreement in a July 19, 2021 Order. In doing so, the Court preliminarily certified the following Settlement Class for settlement purposes only:

> All persons who (1) were borrowers on residential mortgage loans on properties in the United States whose loans were serviced by Caliber, and (2) paid a fee to Caliber for making a loan payment by telephone, [interactive voice response (IVR)], or the internet, from January 1, 2013, to January 21, 2020.

## II.   Settlement Terms

### A.   Benefits to the Settlement Class

The Settlement Agreement, if approved, creates a $5,000,000 non-reversionary common fund and resolves the claims of Plaintiffs and the Settlement Class Members deriving from Caliber's practice of charging additional processing fees when borrowers paid their monthly mortgage by telephone, interactive voice response (IVR), or the internet (Pay-to-Pay Fees). The common fund, which represents approximately 29.38

percent of the alleged damages, provides cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court approves. Settlement Class Members need not submit a claim form to receive monetary compensation pro rata according to the amount of Pay-to-Pay Fees they were charged. In addition to the common fund, the Settlement includes injunctive relief. As of January 21, 2020, Caliber ceased charging or collecting Pay-to-Pay Fees to any Settlement Class Member and to any borrower in the country. As a result of the Settlement, Caliber agrees to refrain from charging or collecting Pay-to-Pay Fees from borrowers for a period of at least two years after entry of a Final Approval Order.

### B. Settlement Administrator and Administration Costs

The Settlement Administrator is Kroll Business Services (Kroll), a leading class action administration firm in the United States. The parties reviewed proposals from several prominent settlement administrators before deciding on Kroll based on overall cost and value to the Settlement Class. The Administrative Costs will be paid from the Gross Settlement Fund.

### C. Class Member Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members,

through the date of this Order, relating to the charging, collection, or attempted collection of Pay-to-Pay Fees.

### D.      Opt-Outs and Objections

The Class Notice advised Settlement Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines to opt out or object.  The deadlines for objecting or opting out of the Settlement have passed.  One objection was filed but later withdrawn, and six Settlement Class Members opted out.

### E.      Attorneys' Fees and Costs and Service Award

Consistent with the Settlement Agreement, Plaintiffs move for attorneys' fees and costs incurred by Class Counsel and Service Awards for each of the Settlement Class Representatives.   The Settlement Agreement provides that Class Counsel may seek attorneys' fees in an amount not to exceed one third of the Gross Settlement Fund (33.33 percent) as well as reasonable expenses incurred in the litigation.   The Settlement Agreement also contemplates up to $5,000 in Service Awards for each of the six Settlement Class Representatives as compensation for their time and effort in the Action. Any approved attorneys' fees, costs, and Service Awards are to be paid from the Gross Settlement Fund prior to distribution to the Settlement Class Members.  In their motion for attorneys' fees and costs, Plaintiffs seek (1) attorneys' fees in the amount of $1,666,500, which is an amount equal to 33.33 percent of the Gross Settlement Fund;

(2) litigation costs in the amount of $10,410.66; and (3) Service Awards in the amount of $5,000 to each of the Settlement Class Representatives.

## ANALYSIS

### I.      Motion for Final Approval

A class action cannot be dismissed or settled without the approval of the district court. *See* Fed. R. Civ. P. 23(e). "Under Rule 23(e) the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *Kloster v. McColl*, 350 F.3d 747, 751 (8th Cir. 2003) (internal quotation marks omitted). As such, a district court may approve a class action settlement only if it determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, a district court should consider "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotation marks and brackets omitted). A class-action settlement agreement is "presumptively valid." *Id.* (internal quotation marks omitted).

### A.      Fairness, Reasonableness and Adequacy

In determining whether the Settlement Agreement is fair, reasonable and adequate, the Court first considers the merits of Plaintiffs' case weighed against the terms of the Settlement Agreement. *Id.* The Settlement amount of $5,000,000 represents approximately 29.38 percent of the alleged damages, allocated on a pro-rata basis to the

Settlement Class Members. The Settlement also includes injunctive relief whereby Caliber agrees to refrain from charging or collecting Pay-to-Pay Fees for a period of at least two years after entry of a Final Approval Order. As this Court previously observed, whereas litigation presents serious risks, substantial expense and delay without any guarantee of success for the Settlement Class, the Settlement provides immediate and substantial benefits to the Settlement Class Members. Moreover, continued litigation likely would take several years to resolve and involve expensive discovery. *See Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). This is especially true when, as here, the defendant vigorously denies the Plaintiffs' allegations. *Cf. Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 259–60 (S.D.N.Y. 2003). Accordingly, this factor supports granting final approval of the Settlement Agreement.

The Court next considers Caliber's financial condition. *Ortega*, 716 F.3d at 1063. It is undisputed that Caliber is solvent, and nothing in the record suggests that Caliber will be unable to pay or will suffer undue harm because of the Settlement. Accordingly, this factor supports granting final approval of the Settlement Agreement.

The Court also must consider the complexity and expense of continued litigation. *Id.* As described in Plaintiffs' motion, Caliber advances numerous defenses and, therefore, continued litigation would result in considerable time and expense. Moreover,

Caliber would have opposed certification of the litigation class and may have appealed any adverse ruling as to that issue. If the Settlement is approved, this case will be resolved before the completion of class certification, summary judgment, expert discovery, and trial preparation. Because the complexity and expense of continued litigation are significant, this factor supports granting final approval of the Settlement Agreement.

The Court also considers the amount of opposition to the Settlement Agreement. *Id.* The number of class members who object to or opt out of the settlement is relevant to whether the settlement is reasonable. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999). That there are relatively few objections to a class-action settlement suggests that the settlement is fair and reasonable. *See, e.g.*, *Kloster*, 350 F.3d at 749–50 (concluding that settlement was fair and reasonable when there were ten objections out of "the hundreds of thousands of eligible class members"). Here, notice of the Settlement was sent to more than 300,000 potential Settlement Class Members. Only six Settlement Class Members opted out of the Settlement and only one Settlement Class Member filed an objection, which has been withdrawn. Accordingly, this factor supports granting final approval of the Settlement Agreement.

In addition to the foregoing considerations, the record reflects that the Settlement was negotiated at arms' length between experienced and sophisticated counsel, affording it the presumption that it is fair and reasonable. *See Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001). Based on the vigorous litigation of the issues, the

exchange of informal discovery, and the rigorous negotiations described in Plaintiffs' submissions, it appears to the Court that the Settlement was negotiated at arms' length and under circumstances demonstrating a lack of collusion.

The record also reflects that the Class Representatives and Class Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation and litigation involving mortgage servicers, financial institutions and fees. The Class Representatives also have supervised the litigation by reviewing pleadings, reviewing the Settlement Agreement, gathering and communicating information to Class Counsel regarding the litigation, and exercising general oversight over the case.

Finally, it appears to the Court that the parties' proposed allocation of the Settlement amount is fair and reasonable. Payments will be made on a pro rata basis depending on the number of Pay-to-Pay Fees each Settlement Class Member paid. According to this allocation, Class Members are treated fairly as to one another because they are compensated according to the amount of Pay-to-Pay Fees they were charged. *See* Fed. R. Civ. P. 23(e)(2)(D); *Valencia v. Greater Omaha Packing*, No. 8:08CV161, 2014 WL 284461, at *3 (D. Neb. Jan. 23, 2014) (finding a pro rata distribution to the class was fair and equitable).

For these reasons, the Court concludes that the Settlement is in all respects fair, reasonable, adequate and in the best interests of the Settlement Class. Accordingly, the

court concludes that the Settlement Agreement satisfies all requirements of Federal Rule of Civil Procedure 23(c) and (e).

### B.      Certification of Settlement Class

The Court finds, for purposes of settlement only, that the Settlement Class meets all the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

The record reflects that the Settlement Class is sufficiently numerous such that joinder would be logistically impossible. The Settlement Class consists of approximately 456,663 Settlement Class Members, who are associated with approximately 322,404 loans. There also is a commonality of interests between the Settlement Class Members, including both questions of law and questions of fact. Plaintiffs' claims depend on the common contentions that Pay-to-Pay Fees are neither authorized by Class Members' mortgages nor permitted by law. The Class Representatives' claims are typical of those of the Settlement Class Members, as the claims arise from the same alleged course of conduct as those of the Settlement Class Members. The Class Representatives and Class Counsel are adequate representatives and have no conflicts with the proposed Settlement Class. And a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts.

Accordingly, the Court finally certifies the Settlement Class for settlement purposes and finds that the certification requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied.

C.    **Notice Plan**

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the discretion of the district court, subject only to the broad "reasonableness" standards imposed by due process. *See Tapia v. Zale Del. Inc.*, No. 13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. April 18, 2017); *see also Rosenburg v. I.B.M.*, No. CV06–00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (providing that notice should inform class members of essential terms of settlement, including claims procedures and the right to accept, object or opt-out of settlement).

The record reflects that the Notice Plan, which consisted of Email Notice and Postcard Notice sent directly to Settlement Class Members, as well as a Long Form Notice, Settlement Website, and toll-free phone line, comported with due process, Rule 23, and all other applicable law. Given the relatively small value at stake for each Class Member, the Court finds that email notice was the best practicable notice under the circumstances. Indeed, the record reflects that more than 99 percent of the Settlement Class Members were provided notice.

Moreover, the substance of the Class Notice fully apprised Class Members of their rights. Under Rule 23(e), notice to class members "must generally describe the terms of

the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted).   The Notice contained all of the critical information required to apprise Class Members of their rights under the Settlement, directed them to the Settlement Website where they could obtain more detailed information, and provided a toll-free number for Class Members to call with questions. This approach to notice was adequate.  *See, e.g.*, *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 10cv1777 AJB (NLS), 2012 WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (approving mailed notice where notice would include the settlement website with settlement details and the claim administrator's toll-free number); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5–*6 (S.D. Cal. July 14, 2014) (same).  Moreover, the Settlement Administrator continues to maintain the Settlement Website and toll-free phone line and respond to inquiries from Class Members.

The Court concludes that the Notice Plan complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and the Class Action Fairness Act, 28 U.S.C. § 1715.

## II.         Motion for Attorneys' Fees, Litigation Costs and Service Awards

In their motion for attorneys' fees and costs, Plaintiffs seek (1) attorneys' fees in the amount of $1,666,500, which is equal to 33.33 percent of the Gross Settlement Fund; (2) litigation costs in the amount of $10,410.66; and (3) Service Awards in the amount of $5,000 to each Settlement Class Representative.

### A.      Attorneys' Fees

Plaintiffs seek an award of attorneys' fees in the amount of $1,666,500, which is equal to 33.33 percent of the Gross Settlement Fund.  An award of attorneys' fees in a class-action lawsuit is within the discretion of the district court.  *Petrovic*, 200 F.3d at 1157; *see also* Fed. R. Civ. P. 23(h).  A typical calculation of attorneys' fees in a class action involves the common-fund doctrine, which is based on a percentage of the common fund recovered.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding attorney fees of 36 percent from a $3.5 million common fund).  Use of a percentage method of awarding attorneys' fees in a common-fund case is "well established."  *Petrovic*, 200 F.3d at 1157.

Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund.  *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases).  When determining whether a percentage of the common fun is reasonable, courts may consider several factors, including the time and labor required, novelty and difficulty of the issues and the level of skill required, the customary fee for similar work in the community, and the amount involved and the result obtained.  *Id.* at 993.

### 1.      Time, Labor and Risk

Plaintiffs' counsel worked on a fully contingent basis and undertook substantial efforts, including factual and legal research, drafting pleadings and other filings, engaging in discovery and reviewing voluminous documents, preparing for and

participating in mediation, and successfully negotiating the Settlement Agreement. The record reflects that Plaintiffs' counsel expended more than 1,000 hours of attorney time at the risk of receiving little or no recovery. As such, the time, labor and risk involved in this case support the requested percentage-based award of attorneys' fees.

### 2. Novelty, Difficulty, and Skill

Plaintiffs' claims involve multiple state and federal debt-collection laws. In addition, many class-action lawsuits "are inherently complex," and early settlement "avoids the costs, delays, and multitudes of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001); *accord Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) ("It goes without saying that class actions are very complex and represent a significant drain on the court in terms of time and management."). Despite these complexities, the record reflects that Plaintiffs' counsel are experienced and sophisticated, with years of experience in complex class-action litigation and litigation involving mortgage servicers, financial institutions and fees. The novelty and difficulty of this case, together with the skill and experience of Plaintiffs' counsel, support the requested percentage-based award of attorneys' fees.

### 3. Customary Fee for Similar Work

Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund. *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 998 (collecting cases); *accord Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (observing that "courts have frequently awarded attorneys' fees ranging up to 36% in

class actions" and affirming award of 38 percent of the net settlement fund). Accordingly, the requested 33.33 percent award requested in this case is consistent with the customary fee for similar work.

### 4.    Result Obtained

As addressed above, the Settlement Agreement significantly benefits the Settlement Class.  These benefits include $5,000,000 allocated on a pro-rata basis and injunctive relief against Caliber.  And because the Settlement Agreement does not require a claims process, Settlement Class Members will automatically receive a payment if they did not opt out.  Moreover, the release-of-claims terms of the Settlement Agreement are narrowly tailored and do not alter or affect any other rights or obligations of Settlement Class Members or Caliber with respect to their relationship with one another.  As such, the result obtained supports the requested percentage-based award of attorneys' fees.

Accordingly, Plaintiffs' request for attorneys' fees in the amount of $1,666,500, which is equal to 33.33 percent of the Gross Settlement Fund, is granted.

### B.    Litigation Costs

Plaintiffs also seek an award of litigation costs in the amount of $10,410.66.  The record reflects that these expenses include filing fees, travel costs, mediation, photocopying, mail and telephone costs, and other incidental expenses related to the litigation of this matter.  Plaintiffs' request for litigation costs in the amount of $10,410.66 is granted.

### C.   Service Awards

Plaintiffs also seek Service Awards in the amount of $5,000 for each of the six Settlement Class Representatives.

"Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017). And "courts in this circuit regularly grant service awards of $10,000 or greater." *Id.* Factors relevant to whether a service award is reasonable include the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and efforts the plaintiffs expended in pursuing the litigation. *Id.* Here, the record reflects that the Class Representatives supervised the litigation by reviewing pleadings, reviewing the Settlement Agreement, gathering and communicating information to Class Counsel regarding the litigation, and exercising general oversight over the case. The Settlement Class has benefited from these actions for the reasons addressed herein, and the time and efforts expended in this case were significant. Moreover, no Settlement Class Member has objected to the requested Service Awards, which are well within the amount typically awarded.

Accordingly, Plaintiffs' request for Service Awards in the amount of $5,000 for each of the six Settlement Class Representatives is granted.

# ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.      Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, (Dkt. 102), is **GRANTED**.

   a. The Settlement Class is finally certified, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

   b. The Settlement Agreement is finally approved as being fair, reasonable and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

   c. Plaintiffs Stephen Phillips, Mary Tourville-Phillips, Sandi Barnett, Gregory Benjamin, Tyrus Davis, and Christopher Bingham are confirmed as Class Representatives.

   d. James L. Kauffman, Randall K. Pulliam, Hassan A. Zavareei and Kristen G. Simplicio are confirmed as Class Counsel.

   e. The Court confirms that the Notice Plan complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

   f. The Court confirms the *cy pres* recipient as Habitat for Humanity.

   g. All Settlement Class Members who timely requested exclusion are excluded from the Settlement.  The Settlement Class Members who did

not timely request exclusion are hereby bound by the terms of the Settlement Agreement.

2.      Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards, (Dkt. 95), is **GRANTED**.

     a. The Court awards $1,666,500 in attorneys' fees and $10,410.66 in litigation expenses to Class Counsel.

     b. The Court approves Service Awards of $5,000 each to Class Representatives Stephen Phillips, Mary Tourville-Phillips, Sandi Barnett, Gregory Benjamin, Tyrus Davis, and Christopher Bingham.

3.      Without affecting the finality of this Order and the judgment, the Court retains jurisdiction over this matter for the purpose of resolving disputes related to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  March 21, 2022                                         s/Wilhelmina M. Wright
                                                              Wilhelmina M. Wright
                                                              United States District Judge